■NICHOLLS, J.
The state of Louisiana proceeded by rule under section 2, Act No. 127, p. 193, of 1898, to collect from each of the several defendant companies a license of $1,000, together with interest and penalties, for the privilege of dealing in exchange in this state during the year 1907.
The defendants, answering, deny that they do the business alleged.
They aver that during the year 1907, and for a number of years prior thereto, they have carried on in the state of Louisiana, and between this state and foreign countries, an express business, for which they have paid the license tax demanded by the tax collector under section 6, Act No. 127, p. 193, of 1898. They also aver that they have never conducted directly or indirectly in this state any other than an express business. They further aver that they have never conducted in the state of Louisiana a banking business, that they employ no capital in Louisiana, that they have never made discounts, that they have never issued their notes or obligations as a circulating medium, and that they have never received deposits. They further aver that section 2 of Act No. 127 of 1898 was enacted for the specific purpose of levying a license tax upon foreign banks engaged in doing a banking business in the state of Louisiana, and was never intended to levy a license tax against express companies.
They further aver that they are authorized by their respective charters or articles of agreement to transport money, as well as other valuables, and that they have been en *654 gaged in the transportation of money since their organization.
They further aver that a very large proportion of the business of transporting money, whether in sealed packages or by the means of money orders, travelers’ checks, etc., is carried on between the state of Louisiana and other states, or between the state of Louisiana and foreign countries, and forms part of an interstate ór foreign business, and that any attempt made by the state to subject said interstate or foreign business to a license'tax is unconstitutional, null, and void, in that it violates clause 3 of section 8 of article 1 of the Constitution of the United States, commonly known as the “commerce clause.”
And, further answering, they aver that no license has heretofore been claimed from them as dealers in exchange, and that the state is now estopped from collecting such a license. By agreement of counsel the case was tried and determined upon the following statement in lieu of oral testimony:
“The state of Louisiana is claiming from the defendants herein a license tax under section 2 of Act No. 127 of 1S98, entitled ‘An act to levy an annual license tax upon certain classes of corporations doing business within the state, whose domiciles are in other states or foreign countries, under article 242 of the Constitution.’ ,
“The American Express Company is a voluntary partnership or association of individuals, organized under articles of agreement between its members under the common law of the state of New York.
“The Wells, Fargo & Co.’s Express is a corporation organized and existing under the laws of the state of Colorado.
“The Pacific Express Company is a corporation organized and existing under the laws of the state of Nebraska.
“The Southern Express Company is a corporation organized and existing under the laws of the state of Georgia.
“All of said companies have filed their declarations of domicile and have designated their agents for the service of legal process, as required by the Constitution and laws of the state of Louisiana.
“All of said companies have paid a license tax to the state of Louisiana for the year 1907 for carrying on an ‘express business,’ as required by section 6 of Act No. 127 of 1898.
“The amounts so paid are as follows:
American Express Company......$ 666 90 Wells, Fargo & Co.’s Express.... 2375 39 Pacific Express Company......... 1485 00 Southern Express Company...... 315 00
“None of said companies has paid a license to the state of Louisiana for the yeaT 1907, or any prior year, on exchange bought or exchange sold, under section 2 of said Act No. 127 of 1898, and no demand was ever made for such license under said section 2 until the present year.
“The said companies are authorized by their respective charters or articles of agreement to transport money as well as other valuables, and they have been engaged in the transportation of money since their organization. Such money has been and is transported by the said companies in two ways:
“(1) In sealed packages, for which a nonnegotiable receipt is issued, a copy of which is attached to this statement, marked ‘A,’ and made a part hereof.
“(2) By issuing a negotiable money order to the person delivering money to the company, a copy of the form of such money order used by said companies being hereto attached, marked ‘B,’ and made a part hereof.
“In addition to these money orders, the American Express Company issued checks or drafts .to the person delivering the money to the express company. These checks or drafts are drawn on London, Paris, Berlin, New York, Chicago, San Francisco, and other cities in Europe and the United States, and in other countries comprising the commercial world.
“The American Express Company and the Wells, Fargo & Co.’s Express also issue a negotiable traveler’s check, if preferred, to the person delivering money to the express company. A copy of the form of such traveler’s check is hereto attached, marked ‘C,’ and made part hereof.
“The rates for the transportation of money in sealed packages vary according to distance and the amount transported.
“The rates charged for money orders by the express companies are as follows:
Not over. p 2 50 3 cents
5 00 5
10 00 10
20 00 10
30 00 12
40 00 15
50 00 18
60 00 20
75 00 25
100 00 30
“No money order is issued for more than $50, but more than one order will be issued to a shipper. The average amount for which money orders are issued by the above-named express companies'' is less than $10. ,
“The rates charged by the American Express Company for checks or drafts are fixed, and are *656 the same as the rates for the transportation of money in sealed packages.
“The rates charged by the American Express Company and the Wells, Fargo & Có.’s Express for traveler’s checks are one-half of 1 per cent.
“The express companies named have never conducted in the state of Louisiana a banking business, have never made discounts, have never issued their notes or obligations as a circulating medium, and have never received deposits.”
There was judgment in the lower court in favor of defendants.
The state has appealed.
In his reasons for judgment the district judge said:
“Pretermitting the issue raised by defendants that their business cannot be taxed because it is interstate and international in character, it seems to me that section 2 of Act No. 127 has no application to defendants. They are not banks, banking associations, banking corporations, or banking companies; nor do they engage in the business of lending money or of dealing in exchange. Indeed, it would be impossible for the state to claim that these foreign corporations, who are the defendants, are doing a banking business in this state, which is legal and subject to the license tax imposed by section 2 of Act No. 127 of 1898, because by section 1, Act No. 179, p. 334, of 1902, as amended by section 1, Act No. 140, p. 240, of 190G, ‘the business of banking shall be carried on only by such incorporated associations as shall have been organized under the laws of this state and of the United States, by individual citizens of the state, and by firms domiciled in the state,_ whose active members shall be citizens of this state,’ etc. The defendants are foreign corporations doing business in this state, after full compliance with our laws, and the state has^ so recognized them by exacting from them a license tax as express companies, under section 6, Act No. 127, of 1898, the title of which act is: ‘To levy an annual license tax upon certain classes of corporations doing business within the state, whose domiciles are in other states or foreign countries, under article 242 of the Constitution.’ ' The proof shows that the American Express Company is an association of individuals, organized under articles of agreement, under the laws of New York; that the Wells-Fargo, Pacific, and Southern Companies are corporations organized, respectively, under the laws of Colorado, Nebraska, and Georgia.
“The one feature of their business as express companies, on which plaintiff seeks to tax them under section 2, Act No. 127, of 1898, is that they issue their own money orders, or checks, or drafts, for money received from customers, when that safe form of transmission and delivery of the money so received is preferred to its actual conveyance in sealed packages. It is an incident of the banking business that the bank buys and sells exchange at varying rates of discount or premium, and that exchange, issued by the selling bank, operates in favor of its customer, the transmission of the funds called for by the paper issued; but this incident does not make of the bank an express company, any more than the issuance of its money order, or check, or draft, as the means of transporting money received from its customers, at a fixed and never-varying rate of charges for the services, makes of the express company a bank.
“The similarity, in the process of issuing exchange by the bank, to the process of the express company in issuing its money orders, and the identity of the result accomplished, viz., the safe realization of the funds drawn for at the place drawn upon without their actual physical transportation, do not, by reason of this one feature, common in one respect only to them both, stamp the business of banking and the express business as one and the same.
“A judgment for each defendant for costs will be entered.”
The demand made upon the defendant companies for licenses is expressly based upon section 2 of Act No. 127 of 1898. The title of that act is:
“An act to levy an annual license tax upon certain classes of corporations doing business within the state, whose domiciles are in other-states or foreign countries, under article 242 of the Constitution.”
The second section of the act requires payment of the license therein provided for as a license for engaging in the business of “lending money” or “dealing in exchange.” The persons charged with a license for engaging in such business «are declared by the section to be “banks, banking associations, corporations or companies.” Defendants contend that the word “banking,” which occurs in the beginning of the enumeration of the persons so chargeable, must be held to have been intended to be repeated before the two subsequent words, “corporations” and “companies,” making the section read:
“All banks, banking associations, banking corporations, and banking companies who may in their own name or in the name of their agents or representatives engage in the state in the business of lending money or dealing in exchange shall pay a license of 2% per cent, on the gross profits of all money loaned and all exchange sold and all other business done: Provided no license shall issue as provided in this section for less than $1,000; provided that the minimum license of $1,000 shall not apply to those *658 corporations or companies lending money secured solely by mortgage or real estate.”
Counsel for the state deny the correctness of that proposition and maintain that all corporations or companies, whether banking corporations or companies which engage in the business of lending money or dealing in exchange, are required to pay the license provided for. They say:
“Section 6 of the same act declares that for the carrying on of what is commonly known as an express business each company shall pay an annual license of §10 upon, each $1,000 of gross earnings from business done wholly within this state, including the pro rata of interstate business earned within the state.”
Counsel contend that this business by express companies “of lending money or dealing in exchange” is a business and distinct business from the business proper of express companies, and they must pay a license separate and distinct from that which they pay for engaging in the express business proper.
They cite in support of that proposition City of New Orleans v. Metropolitan Bank, 31 La. Ann. 310, City of New Orleans v. Koen & Co., 38 La. Ann. 328, and State v. Hartwell, 117 La. 144, 41 South. 444.
We are not called on in this case to say whether there may not be foreign corporations or companies, other than banking corporations or banking companies, who may be engaged in Louisiana in the business of lending money or dealing in exchange, who can properly be held liable to a license under section 2 of Act No. 127 of 1898, but to declare whether corporations or companies engaged in what is commonly known as an “express business” can be so held. If they can be so held, then that license is made to cover all other business in which they are engaged, in this case all express business strictly such; the amount fixed for the license by that section being at 2% per cent, on the gross profits, not only of all money loaned and all exchange bought and all exchange sold, but of all other business done. But the license for all done by express companies is not fixed by section 2 of the act, but specially and separately by a later section of the same act (section 6) at $10 upon each $1,000 of gross earnings from business done wholly within this, state, including the pro rata of interstate-business earned within the state.
We are of the opinion that express companies were not intended to be included and fall under the provisions of section 2 of the act.
The judgment appealed from is, in our opinion, correct; and it is hereby affirmed.
MONROE and PROVOSTY, JJ., concur in the decree.